ORIGINAL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/26/17

SOUTHERN DISTRICT OF NEW YORK

**J.T. MAGEN & COMPANY, INC.,**

                Plaintiff,

     - against -

**ALLEN EDMONDS CORP.,**

                Defendant.

15 Civ. 8620 (LLS)

**OPINION & ORDER**

Allen Edmonds Corp. ("Allen Edmonds") moves, pursuant to Fed. R. Civ. P. 56, for summary judgment in its favor and to dismiss with prejudice J.T. Magen & Company, Inc.'s ("JT") complaint. For the reasons that follow, the motion is denied.

Plaintiff JT and non-party Swenson Construction Company ("Swenson") were retained to carry out the general construction work at a store belonging to Allen Edmonds. The dispute is over which one was the general contractor. JT claims Swenson was acting as Allen Edmonds' agent, and JT as its general contractor. Allen Edmonds claims Swenson was its general contractor, and JT a subcontractor of Swenson. Their roles matter, because if JT was Swenson's subcontractor it is Swenson who is responsible for paying for JT's work, not defendant Allen Edmonds. (Swenson is now out of business, and some of JT's work remains unpaid-for.)

On this motion, the issue is whether the answer to that dispute is so clear that it can be given as a matter of law, or

whether there are genuine facts at issue which must be resolved at a trial.

Subject matter jurisdiction exists under 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

**BACKGROUND**

Plaintiff JT is a New York corporation based in New York City. It is a general contractor who performs work in and around New York. Defendant Allen Edmonds is a Wisconsin corporation based in Port Washington, Wisconsin and owns the retail company by the same name.

Swenson is a California based corporation. Swenson had been general contractor on a number of Allen Edmonds' prior construction projects. Swenson usually provided on-site project supervision but did not itself perform construction work. In the Allen Edmonds construction projects that Swenson did not work on, Allen Edmonds required its general contractors to sign a written contract that contained terms and conditions, but with Swenson Allen Edmonds relied on a one page purchase order that did not contain terms and conditions.

On November 15, 2012, JT submitted a proposal to Swenson "to provide all labor and materials necessary to carry out the general construction work as per James Dayton Design drawings

-2-

dated 09/17/2012 and Lynstarr Engineering, PC drawings dated 08/09/2012" at the Allen Edmonds store located on West 43rd Street in New York City for $478,081.00. Swenson, with Allen Edmonds' approval, accepted JT's proposal.

On November 16, 2012, Swenson submitted a bid sheet to Allen Edmonds for $561,089.10. Swenson's bid sheet contains nearly identical line items and prices as JT's proposal to Swenson. Swenson's bid sheet also includes an item called "Contractor Overhead & Profit (10%)" for $51,008.10, which is based on the total cost in Swenson's bid. Allen Edmonds selected Swenson's bid, and on November 19, 2012 it issued a purchase order to Swenson for $561,089.10. JT's proposal is attached to the purchase order Allen Edmonds issued to Swenson.

JT claims that it submitted its proposal, whereby it agreed to perform general construction work for Allen Edmonds, to Swenson who was Allen Edmonds' agent. Allen Edmonds claims that Swenson was its general contractor for the project, and that Swenson independently hired JT.

After Allen Edmonds issued the purchase order to Swenson, JT began working at the project. No Allen Edmonds employees were at the site during the project. Swenson did not itself provide labor or materials for the project; it provided daily on-site supervision though Art Medley, a Swenson representative.

Swenson and JT had regular and direct interaction

-3-

throughout the project. JT's main contact for the project was Derek Swenson, another Swenson representative. All of JT's questions relating to change orders, requests for information, or the status of payment were communicated by JT to Swenson personnel, and all directions and orders to JT relating to construction services came from Swenson personnel. All change orders were signed by Derek Swenson. According to Allen Edmonds, Swenson made all decision and approvals relating to invoicing, payments, requests for information, and change orders independently without need for approval or direction from Allen Edmonds. When the project was completed, JT sent a letter of completion to Derek Swenson. JT had no interaction with Allen Edmonds personnel until the summer of 2013 when JT became worried that Swenson would not pay JT.

When Allen Edmonds' landlord notified Allen Edmonds that its contractor must provide a certificate of insurance, Allen Edmonds did not follow its typical practice of requiring Swenson to provide insurance. Instead, JT provided the insurance. The certificate of insurance lists JT as the named insured, identifies the job operation, lists Allen Edmonds as an additional insured, and does not mention Swenson. JT also obtained the work permits required by the New York City Buildings Department to perform work at the project; the permits list JT as the contractor for the project.

In a January 11, 2013 email from Allen Edmonds' expeditor, Dominion Expediting, to Julie Scott, Allen Edmonds' store manager (on which Todd Miller, Allen Edmonds' Director of Store Environments, and JT personnel were copied) Dominion asked Ms. Scott to forward plans approved by the Buildings Department to JT. It referred to JT as the general contractor. Ms. Scott replied that she would deliver the plans to JT, who eventually received them. JT was described as general contractor in two other emails sent by Dominion to Mr. Miller, and in one sent by Dominion to Derek Swenson on which Mr. Miller was copied. Mr. Miller did not object to or correct that characterization of JT.

JT submitted a total of eight invoices for payment to Swenson. Each one was addressed to Allen Edmonds. JT claims that the invoices were submitted to Allen Edmonds via Swenson. The invoices were accompanied by payment requisitions which break down the services provided and payment owed, and lien waivers, and they all describe Allen Edmonds as owner and JT as contractor for the project; they do not mention Swenson. Swenson personnel reviewed the documents submitted by JT. Swenson then submitted a one page request for payment to Allen Edmonds, along with supporting documents, that was reviewed by Todd Miller. JT claims that those supporting documents were JT's invoices, payment requisitions and lien waivers. Allen Edmonds denies receiving and reviewing them. Mr. Miller authorized payment to

Swenson based on Mr. Medley's verbal representation that the work had been performed. Swenson then paid JT. JT was paid for three of its invoices with Swenson's checks, totaling $365,731.94.

Swenson never objected to JT's invoices, but sometime after May 16, 2013, it stopped paying JT and became non-responsive. Swenson eventually went out of business.

Allen Edmonds never informed JT that Swenson was its agent. JT admits that it has no knowledge of the details of the relationship between Allen Edmonds and Swenson, and it has no document in which Allen Edmonds acknowledges Swenson as its agent.

On October 30, 2015, JT commenced this action against Allen Edmonds for breach of contract, quantum meruit, and account stated, seeking relief in the amount of $230,570.86 (the unpaid amount on its five outstanding invoices), together with interest and costs.

Allen Edmonds moves for summary judgment on the grounds that its agreement is with Swenson only and that it incurred no obligation to JT. JT argues that summary judgment is not appropriate because there is a material dispute over whether JT was working for directly for Allen Edmonds or not.

## DISCUSSION

### Standard for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Baldwin v. EMI Feist Catalog, Inc., 805 F.3d 18, 25 (2d Cir. 2015), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). "In looking at the record, we construe the evidence in the light most favorable to the nonmoving party and draw all inferences and resolve all ambiguities in favor of the nonmoving party." Dalberth v. Xerox Corp., 766 F.3d 172, 182 (2d Cir. 2014), quoting In re Omnicom Grp., Inc. Sec. Litig., 597 F.3d 501, 509 (2d Cir. 2010).

Whether JT was Allen Edmonds' general contractor, as JT contends, or Swenson's subcontractor, as Allen Edmonds contends, is material because liability turns on it. The issue is therefore whether the evidence is such that a reasonable jury could return a verdict in JT's favor.

### Breach of Contract Claim

Allen Edmonds argues that because there is no direct evidence of a communication from it to Swenson that authorized Swenson to engage JT's services on Allen Edmonds' account, JT's

claims must fail.

However, the record is replete with evidence from which a reasonable factfinder might conclude that the relationship between Allen Edmonds and JT was that of owner and general contractor.

Allen Edmonds did not enter into a contract with Swenson that contains terms and conditions as it did with its other general contractors; instead it relied on a purchase order. One might well conclude from the fact that Swenson's proposal is attached to Allen Edmonds' purchase order that Swenson's proposal is a part of what Allen Edmonds purchased.

Once the work began, Swenson's role at the project was supervisory. Swenson did not perform work or provide materials. Swenson did not hire any contractors other than JT; JT hired the subcontractors. Allen Edmonds never objected to or corrected references made to JT as general contractor. When the Buildings Department approved Allen Edmonds' plans, Allen Edmonds sent the approved plans directly to JT, and not to Swenson. While Allen Edmonds typically required its general contractor to provide insurance, it did not require Swenson to provide insurance; instead JT provided the insurance for the project. JT also procured the necessary building permits, which name JT as contractor. JT's invoices, from the very start of the project, were addressed to Allen Edmonds, and JT's lien waivers released

JT's claims against Allen Edmonds upon payment; neither mention Swenson. Allen Edmonds issued payment upon Swenson's verbal representation that the work had been performed.

One might conclude from Allen Edmonds' conduct, silence, and lack of objection throughout the course of the project in response to JT acting as its general contractor, combined with the fact that JT's proposal was submitted as part of Allen Edmonds' agreement with Swenson, that Allen Edmonds acquiesced with an arrangement with both of them, under which in fact Swenson acted as Allen Edmonds' agent and JT as its general contractor.

"A motion for summary judgment does not entitle the court to try issues of fact. Its function is limited to deciding whether there are any such issues to be tried." FLLI Moretti Cereali S.p.A. v. Continental Grain Co., 563 F.2d 563, 566 (2d Cir. 1977), citing United States v. Bosurgi, 530 F.2d 1105 (2d Cir. 1976).

Moreover, as the Second Circuit has held of agency relationships:

> Generally, the existence of either actual or apparent authority is a question of fact, revolving as it does around the actions by, and relationships between, principal, agent, and third parties. Thus, the existence and scope of an agency relationship can be resolved as a matter of law only if: (1) the facts are undisputed; or (2) there is but one way for a reasonable jury to interpret them.

Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading, Inc.,

697 F.3d 59, 71-72 (2d Cir. 2012) (internal citations omitted).

There are factual disputes, and there is more than one way reasonably to interpret them. Allen Edmonds' motion for summary judgment is denied.

### Quantum Meruit Claim

"Where the existence of a contract is in dispute, the plaintiff may allege a cause of action to recover in quantum meruit as an alternative to a cause of action alleging breach of contract." Thompson v. Horowitz, 141 A.D.3d 642, 643-44, 37 N.Y.S.3d 266, 268 (2d Dep't 2016), citing Thompson Bros. Pile Corp. v. Rosenblum, 121 A.D.3d 672, 674, 993 N.Y.S.2d 353, 355 (2d Dep't 2014). "In order to recover in quantum meruit under New York law, a claimant must establish '(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services.'" Leibowitz v. Cornell Univ., 584 F.3d 487, 509 (2d Cir. 2009), quoting Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 175 (2d Cir. 2005).

As a quasi-contractual claim, Revson v. Cinque & Cinque, P.C., 221 F.3d 59, 69 (2d Cir. 2000), quoting Longo v. Shore & Reich, Ltd., 25 F.3d 94, 98 (2d Cir. 1994), quantum meruit is a remedy precisely where there is "no agreement or expression of assent, by word or act, on the part of either party involved."

-10-

Thompson, 141 A.D.3d at 644, 37 N.Y.S.3d at 268, quoting Bradkin v. Leverton, 26 N.Y.2d 192, 196, 257 N.E.2d 643, 645, 309 N.Y.S.2d 192, 195 (1970). "[T]he existence of a valid contract governing the subject matter generally precludes recovery in quasi contract for events arising out of the same subject matter." EBC I, Inc. v. Goldman, Sachs & Co., 5 N.Y.3d 11, 23, 832 N.E.2d 26, 33-34, 799 N.Y.S.2d 170, 177-78 (2005), citing Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co., 70 N.Y.2d 382, 388, 516 N.E.2d 190, 193, 521 N.Y.S.2d 653, 656 (1987); see Leibowitz, 584 F.3d at 507 ("it is an elementary principle of contract law that, where there exists an express contract for compensation, an action outside that contract will not lie").

Here, there is no dispute over the existence of an agreement that covers the subject matter of the quantum meruit claim. The dispute is over whether Allen Edmonds is liable under that agreement. Therefore, it appears that JT cannot recover under quantum meruit.

However, the Second Circuit has held that before dismissing a subcontractor's claim against the owner for quasi-contract the court must inquire "whether the landowner acted in such a way as to incur obligations to the subcontractor outside the contractual structure." EFCO Corp. v. U.W. Marx, Inc., 124 F.3d 394, 401 (2d Cir. 1997), citing U.S. East Telecomms., Inc. v. US W. Commc'ns Servs., Inc., 38 F.3d 1289, 1297 (2d Cir. 1994). This

is because "a subcontractor may recover from a landowner (and a sub-subcontractor from a general contractor), even when a separate contract exists between the subcontractor and general contractor, if the owner has agreed to pay the general contractor's debt or if the circumstances surrounding the parties' dealings can be found to have given rise to an obligation to pay." Id., citing U.S. East, 38 F.3d at 1298.

Because the circumstances surrounding the Allen Edmonds and JT's dealings can be found to have given rise to an obligation to pay, JT is able to pursue its quantum meruit claim.

## Account Stated Claim

Under New York law, a claim for account stated exists where there is "an agreement between the parties to an account based upon prior transactions between them." LeBoeuf, Lamb, Greene & MacRae, LLP v. Worsham, 185 F.3d 61, 64 (2d Cir. 1999), quoting Chisholm-Ryder Co. v. Sommer & Sommer, 70 A.D.2d 429, 431, 421 N.Y.S.2d 455, 457 (4th Dep't 1979). "Such an agreement may be implied if 'a party receiving a statement of account keeps it without objecting to it within a reasonable time' or 'if the debtor makes partial payment.'" Id., quoting Chisholm-Ryder, 70 A.D.2d at 431, 421 N.Y.S.2d at 457. "Where either no account has been presented or there is any dispute regarding the correctness of the account, the cause of action fails." M&A Constr. Corp. v. McTague, 21 A.D.3d 610, 611-12, 800 N.Y.S.2d 235, 237-38 (3d

Dep't 2005).

JT argues that an account stated exists because it submitted invoices and payment requisitions to Allen Edmonds via Swenson and Allen Edmonds did not object to them. Allen Edmonds argues that it was never presented with JT's invoices, although it does not identify the supporting documents that Swenson submitted to it with its requests for payment.

Allen Edmonds claims that an account stated cannot be implied because when presented with JT's invoices in the summer of 2013 it promptly rejected JT's demand for payment. But the basis for the account stated claim is the invoices and requisitions submitted by JT periodically throughout the course of the project three of which JT received payment for from Swenson with—what JT claims is Allen Edmonds' money.

These factual disputes cannot be resolved on summary judgment.

## CONCLUSION

Allen Edmonds' motion for summary judgment (Dkt. No. 36) is denied.

\* \* \*

A conference will be held on Friday, July 21, 2017 at 12 o'clock noon to set a trial date.

So ordered.

Dated: New York, New York
June 23, 2017

*Louis L. Stanton*
LOUIS L. STANTON
U.S.D.J.